**STATE of Tennessee, Appellee,**

v.

**Albert MACKEY, Jr., Appellant.**

Court of Criminal Appeals of Tennessee, at Knoxville.

March 5, 1982.

Permission to Appeal Denied by the Supreme Court June 7, 1982.

William M. Leech, Jr., Atty. Gen., J. Andrew Hoyal, II, Asst. Atty. Gen., Nashville, James R. Dedrick, Asst. Dist. Atty. Gen., Knoxville, for appellee.

Wesley L. Pendergrass, Knoxville, for appellant.

## OPINION

WALKER, Presiding Judge.

Under the first four counts of an eight-count presentment, the jury in Knox County Criminal Court found the appellant, Albert Mackey, Jr., guilty of (1) first degree burglary and fixed his punishment at not less than eight nor more than ten years in the penitentiary; (2) armed robbery with 20 years' imprisonment; (3) assault and battery with 11 months and 29 days in the Knox County Penal Farm; and (4) aggravated kidnapping with 30 years in the penitentiary. On the second phase of the bifurcated trial, one of the habitual criminal counts was submitted to the jury. It found him guilty of being an habitual criminal and his armed robbery conviction was enhanced to life imprisonment. The trial judge ordered that the 30-year sentence for aggravated kidnapping be served consecutive to the life sentence. He further ordered that the burglary and assault and battery sentences be served concurrently with that for aggravated kidnapping.

We find no reversible error and affirm the convictions.

At approximately 3:00 a.m., September 27, 1980, Robert William Bullard was awakened when a man crashed through his bedroom window and on to him in bed. The assailant, later identified by police officers as the appellant, threw Mr. Bullard to the floor and tied his hands and feet with a telephone cord. He then took Mr. Bullard's loaded .38 caliber pistol from his nightstand and demanded Mr. Bullard's car keys.

Mackey ransacked the house, finding the car keys, a .25 caliber automatic pistol, several hundred dollars, some valium pills and two bottles of vodka. He opened the vodka and drank about one and one-half ounce from each bottle. During his ordeal, Mr. Bullard was in such a position that he could not get a clear view of Mackey and could not positively identify him.

About 4:00 a. m., several police officers arrived in response to a burglary report. For at least an hour they negotiated with Mackey who repeatedly threatened to kill them and his hostage. An officer fired once unsuccessfully at Mackey and Mackey fired twice into the floor. Under cover of police guns, Mr. Bullard was finally able to untie himself and crawl out another bedroom window.

When Mackey learned that Mr. Bullard had escaped and that another team of officers was arriving, he surrendered. Some of Mr. Bullard's personal property was found in a pillowcase in the hallway of the apartment. At the arrest the appellant gave his name as Calvin Wilson. Soon after being taken to jail, he became ill and was taken, semi-conscious, to a hospital where his stomach was pumped and particles of valium pills were found.

Mackey contends that the presentment under which he was tried should have been dismissed by the trial court because he was never afforded a preliminary hearing. He was arrested without a warrant on the morning of September 27, 1980. Two warrants for his arrest (one for burglary and the other for felonious assault) were later issued that same day.

Appellant was arraigned on September 29, 1980, at which time he informed the court of his intention to retain a particular attorney. This attorney was never retained in the present case.

The preliminary hearing was scheduled for October 6, 1980, and on that day Mackey appeared and informed the court that he had been unable to retain counsel. The state was ready with its witnesses. The Legal Aid Clinic was appointed to represent appellant at that time, and the matter was continued over the state's objection until October 14. On that date, appellant's trial counsel was retained, the state was ready again with its witnesses, and appellant's counsel requested another continuance until November 5, 1980, so that he could investigate the case. The state neither objected to nor joined in this latter motion for a continuance. The state requested appellant to waive his preliminary hearing in exchange for a copy of the police report and the names of witnesses. The district attorney general's office contacted appellant's counsel several times in the next two weeks concerning this matter. Thirty days passed from appellant's arrest, and on October 31, 1980, the grand jury returned a true bill.

Rule 5(e), Tenn.R.Crim.P., provides in part:

"If the defendant is indicted during the period of time in which his preliminary hearing is being continued, or at any time before accused has been afforded a preliminary hearing on a warrant, whether at his own request or that of the prosecutor, he may dismiss the indictment upon motion to the court. *Provided, however, that no such Motion to Dismiss shall be granted after the expiration of thirty days from the date of defendant's arrest.*" (emphasis added).

Appellant concedes that more than 30 days had passed from the time of his arrest until the grand jury returned its presentment against him. However, he relies on the case of *Moore v. State,* 578 S.W.2d 78 (Tenn.1979), in arguing that the 30-day lim-

itation is not applicable to his case. In *Moore* the defendant was ready to proceed at the time of his preliminary hearing, but the state sought to introduce inadmissible hearsay testimony. The preliminary hearing had to be continued for an *indefinite time* essentially because of the state's fault. Our Supreme Court held that the 30-day limitation. was not applicable in that case. In the instant case, the state was not at fault for any delay in appellant's preliminary hearing. In *Moore* the court stated:

"We hold that the 30-day limitation by the last paragraph of sec. 40–1131, T.C.A. (now Rule 5(e), Tenn.R.Crim.P.) is applicable only when all parties—*including the defendant, who must act promptly*—have acted in good faith and in compliance with the statute. *The failure of the court or the prosecution to exercise good faith and to abide the law operates to toll the statute and preclude its invocation.*" (emphasis added) 578 S.W.2d at 82.

Appellant contends the state exercised bad faith. However, it cannot be said that the state exercised bad faith when it did not cause or ask for the preliminary hearing to be continued. The mere failure of the state to object to a continuance, without also joining in the motion, does not amount to bad faith. This issue is overruled.

Next, appellant contends that the trial court erred in admitting the medical reports concerning his mental condition. The appellant's counsel, anticipating a defense of mental incapacity due to drug and alcohol intoxication, filed an appropriate notice with the trial court. An examination of appellant was held pursuant to court order. A clinical social worker and a clinical psychologist examined appellant. They filed two reports, the first by the clinical social worker, who was coordinator of the forensic services program at the Helen Ross McNabb Mental Health Center, to the effect that the appellant was competent to stand trial. The second was by a clinical

psychologist at the center and was to the effect that the appellant was sane at the time of the crime. The appellant contends that these reports were inadmissible because they were not prepared by medically qualified persons. In his petition to the trial court, appellant requested a psychiatric examination at the Helen Ross McNabb Center, pursuant to T.C.A. 33–708. That statute allows examination of a defendant by a community health center upon proper petition. In *Graham v. State*, 547 S.W.2d 531 (Tenn.1977), the court, in referring to T.C.A. 33–708, noted:

> "(T)he statute is discretionary, since it in no sense requires such an examination, *nor does it specify that the examination be conducted by a psychiatrist as opposed to a psychologist . . .*" (emphasis added) 547 S.W.2d at 535.

Likewise, the statute does not specify that the examination to determine a defendant's competency to stand trial cannot be done by a clinical social worker. This issue is overruled.

■ In his third issue, Mackey contends that the trial court erred in overruling his motion for replacement of the prosecutor filed March 9, 1981. Appellant's trial was held on March 10, 11 and 12, 1981. Appellant argues that a local newspaper article appearing March 4, 1981, in which the prosecuting attorney in his case was identified as heading a team of prosecutors who only tried cases involving defendants with at least two prior felony convictions, caused appellant to be subject to prejudicial pretrial publicity. There is no showing in the record of any prejudice to appellant caused by this article. Appellant's counsel chose not to inquire of prospective jurors on voir dire examination to determine whether they had read the article. Further, the appropriate remedy for prejudicial pretrial publicity is a motion for a change of venue pursuant to Tenn.R.Crim.P. 21. This issue is overruled.

In his next issue, Mackey argues that the trial court committed reversible error by overruling his motion for a mistrial because of another article appearing in a local newspaper. On March 11, the jury began its deliberations in the first phase of appellant's trial. At 6:00 p. m. court was adjourned and the jury was separated, to go home, a sequestered jury having been waived by both sides at the beginning of the trial. Before sending the members of the jury home, the trial judge told them that they were not to read anything at all about the case. The newspaper article appeared in that afternoon's paper. The article concerned the proceedings of appellant's trial and facts surrounding the habitual criminal proceeding pending against him, including information of his prior convictions.

The jury returned the next morning, and after deliberating approximately three more hours, returned its guilty verdicts in the first phase of the trial. The appellant did not make his oral motion for a mistrial until after these verdicts were rendered. The trial court overruled this motion and stated that appellant's motion to poll the jury was premature. The requests were renewed at the conclusion of the trial, but were again denied.

Appellant relies upon *Gonzales v. State*, 593 S.W.2d 288 (Tenn.1980), to argue that the trial court committed reversible error. However, in footnote 1 to *Gonzales*, supra, the court stated that T.C.A. 40–2528 was not applicable, because the defendants there had not consented to a jury separation after the jury had been sequestered one night. Appellant's reliance on *Gonzales* is therefore misplaced.

■ T.C.A. 40–2528 provides for the jury to be separated when they are not engaged in the trial or deliberations, with the consent of the defendant and the state and in the discretion of the court. By waiting until after the jury had rendered its verdicts to move the court for a mistrial, appellant waived this issue. T.R.A.P., 36(a). cf. *Rushing v. State*, 565 S.W.2d 893

(Tenn.Cr.App.1977). If error, which we do not hold, it was at most harmless in view of the overwhelming evidence of the appellant's guilt and the fact that the jury did not return maximum sentences for the crimes for which the appellant was convicted. On the aggravated assault count, the jury found Mackey guilty of a misdemeanor.

Next appellant contends that the trial court erred in not admitting police reports of other crimes in which the victim, Mr. Bullard, was also an alleged victim of burglaries and larcenies. Appellant sought to introduce these documents to attack Mr. Bullard's credibility.

Appellant apparently intended for the jury to infer from these police reports that Mr. Bullard fabricated instances of crimes against him. In *State v. Morgan,* 541 S.W.2d 385 (Tenn.1976), our Supreme Court adopted Federal Rules of Evidence 608(b) as the law to be followed in situations such as the one now before this court. That rule provides in part:

"(b) *Specific instances of conduct.* Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in rule 609, *may not be proved by extrinsic evidence.* They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified." (emphasis added)

The *Morgan* court further held that:

"(W)here a witness is sought to be cross-examined as to specific instances of conduct as contemplated by Rule 608(b), the Court shall conduct a jury-out hearing for the purpose of determining that the probative value of such evidence outweighs its prejudicial effect." 541 S.W.2d at 390.

■ It is clear that the police reports were not admissible, as they are extrinsic evidence. The appellant's counsel did not cross-examine Mr. Bullard about his prior instances of being a crime victim. However, a jury-out hearing was held on the admissibility of the police reports, and the trial court held that the information contained therein was not relevant, stating that if Mr. Bullard had been the victim of several crimes, it does not go to the issue of credibility. In effect, the trial court held that the information was more prejudicial than probative, and even if appellant's counsel had requested to simply cross-examine Mr. Bullard on this information, without seeking to introduce the police reports, the state's objection would have been properly sustained. This issue is without merit.

■ The appellant says that the court erred in refusing to permit defense counsel to question Officer McElleney about a prior inconsistent statement. He did not lay a proper foundation for the question and the trial judge correctly denied it. *James v. State,* 506 S.W.2d 797 (Tenn.Cr.App.1974). This issue is meritless.

Gregory Mattress testified at the trial for the defense. His prior convictions for murder and armed robbery were elicited on direct examination. The following exchange occurred on cross-examination:

"Q And that murder involved a man that was killed in a telephone booth in Magnolia; is that right?

MR. PENDERGRASS: I object, your Honor.

THE COURT: I sustain the objection.

MR. PENDERGRASS: The facts of that case—

THE COURT: The facts of the other cases are not relevant."

■ Appellant contends that the trial court's failure to give curative instructions to the jury concerning these statements is reversible error. Appellant failed to request a curative instruction when it was not

forthcoming from the trial court. Therefore, this issue is waived. T.R.A.P. 36(a). Further, the trial court stated that the facts of the prior convictions were not relevant. This served to minimize the effects of the assistant district attorney general's remarks, and it cannot be said that the appellant suffered prejudicial harm. This issue is without merit.

■ Appellant further contends that the trial court erred in overruling his objection to that portion of the assistant district attorney general's closing argument concerning Mattress' prior convictions. This fact was properly in evidence and thus proper for comment in closing argument.

■ Appellant made an oral request for the jury to be instructed on intoxication. The trial court denied the request because it felt that the evidence did not warrant such an instruction. Rule 30(a), Tenn.R.Crim.P., envisions that such requests be made in writing and requires that copies be given to adversary counsel. Since the request was not made in writing, the trial court did not err in refusing to instruct the jury on intoxication. Furthermore the trial court was correct in holding that there was no evidence that appellant was intoxicated at the onset of the offense. This issue must be overruled.

In his next issue, appellant contends that the conviction for aggravated kidnapping must be reversed and dismissed because any confinement that took place in this case was incidental to the robbery and therefore could not support the additional aggravated kidnapping conviction. The statutory provision under which appellant was convicted for aggravated kidnapping was as follows:

"(a) Any person who seizes, confines, inveigles, entices, decoys, abducts, conceals, kidnaps or carries away any individual shall be deemed guilty of aggravated kidnapping when one or more of the following circumstances are present:

. . . .

"(3) the kidnapping is committed while armed with a deadly weapon, . . ." Public Acts 1979, ch. 318, sec. 7(a).

The armed robbery conviction also required proof that appellant committed the crime by use of a deadly weapon. The presentment charged that appellant's possession and use of the victim's pistol met the necessary requirement of commission of these crimes by use of a deadly weapon.

■ If the facts of the kidnapping are an essential element or integral part of the armed robbery, then separate convictions cannot be sustained. However, if the facts of the kidnapping are separate and apart from the armed robbery, then the two convictions must be upheld. While both offenses were committed with the use of the pistol, the appellant kidnapped the victim by holding him as a hostage and the armed robbery was completed by the appellant taking the personal goods and money of the victim. Holding the victim hostage was not necessary to prove armed robbery, and taking the personal goods and money was not necessary to prove aggravated kidnapping. This issue must be overruled. *Brown v. State,* 574 S.W.2d 57, 62 (Tenn.Cr.App. 1978).

■ Finally, appellant contends that the trial court abused its discretion in ordering that the 30-year sentence imposed for aggravated kidnapping be served consecutive to the sentence imposed for armed robbery which was enhanced to life imprisonment by the jury's finding that appellant was an habitual criminal. Appellant does not contend that the trial court erred in finding that he met the criteria for consecutive sentencing as outlined in *Gray v. State,* 538 S.W.2d 391 (Tenn.1976). Rather, the appellant claims that the legislature did not intend that punishment, even for repeat offenders, be doubly enhanced. By this logic appellant argues that enhancement of sentences to life imprisonment under the habitual criminal statute should preclude consecutive sentencing. Appellant cites no authority to support his argument, and this court has found none. The fact that an enhanced sentence is ordered to be served

consecutive to another sentence does not violate statutory or case law in Tennessee.

All issues are overruled and the judgments are affirmed.

DAUGHTREY and BYERS, JJ., concur.