STATE of Tennessee, Appellee,

v.

Robert L. PEAT, III, Appellant.

Court of Criminal Appeals of Tennessee, at Jackson.

Feb. 21, 1990.

Permission to Appeal Denied by Supreme Court May 14, 1990.

Charles W. Burson, Atty. Gen. & Reporter, Byron M. Jones, Asst. Atty. Gen., Nashville, Paul G. Summers, Dist. Atty. Gen., Dan Douglas, Asst. Dist. Atty. Gen., Somerville, for appellee.

Joe H. Walker, III, Ripley, for appellant.

## OPINION

JONES, Judge.

The appellant, Robert L. Peat, III, was convicted of murder second degree and aggravated assault by a jury of his peers. The trial judge found that the appellant was a standard offender and imposed the following Range I sentences: (a) a term of twenty (20) years for murder second degree with an additional five (5) years to be

served consecutively because the appellant used a firearm in the commission of the crime, an effective sentence of twenty-five (25) years; and (b) five (5) years for the offense of aggravated assault. The sentences were ordered to be served concurrently in the Department of Correction.

## ISSUES PRESENTED FOR REVIEW

The appellant has raised four (4) issues for our review. He contends that the trial court committed error of prejudicial dimensions in (a) denying his motion for judgment of acquittal as to murder first degree and murder second degree, (b) sentencing him to a consecutive term of five (5) years for the use of a firearm when the trial judge charged the jury it could infer the element of malice since a deadly weapon was used in the killing, (c) failing to give a curative instruction when the District Attorney General stated in summation the defendant had conceded his guilt of manslaughter, and (d) failing to grant a mistrial due to the conduct of the victim's mother as she mingled with the jurors in a hallway.

## FAILURE TO GRANT MOTION FOR JUDGMENT OF ACQUITTAL

The appellant made a motion for the entry of a judgment of acquittal at the conclusion of the State's case in chief.[1] Defense counsel contended that the evidence introduced by the State was insufficient to support a conviction for either first degree murder or second degree murder. Counsel cited *State v. Thornton*,[2] in support of his argument. The trial court denied the motion. Thereafter, the appellant and other witnesses testified in support of his defense.

The appellant may not predicate error upon the fact the trial judge denied his motion for judgment of acquittal at the conclusion of the State's proof. He waived this issue when he elected not to stand on

---

**1.** Tenn.R.Crim.P. 29(a).

**2.** 730 S.W.2d 309 (Tenn.1987).

his motion and introduced evidence in support of his defense.[3]

The appellant renewed his motion for a judgment of acquittal at the conclusion of all the evidence.[4] The trial judge denied this motion as well. This issue has not been waived; and we will consider this issue on the merits.

■■■ The motion for a judgment of acquittal presents a question of law.[5] The trial judge's only concern is the legal sufficiency as opposed to the weight of the evidence.[6] In determining whether "the evidence is insufficient to sustain a conviction",[7] at the conclusion of all the evidence, the trial judge must consider the evidence introduced by the parties, disregard any evidence which conflicts with the evidence introduced by the defendant, and afford the State the strongest legitimate view of the evidence, including all reasonable inferences which may be drawn from the evidence.[8] With this rule in mind, we will undertake to analyze the evidence.

■■ The record establishes that the appellant and Cheryl Cates, one of the victims, lived together for approximately two years. A child was born as a result of this relationship. In January of 1988 serious problems surfaced, the problems became irreconcilable, and the parties separated. The appellant was permitted to see his son after the separation. It is uncontradicted that the appellant and Ms. Cates were never married.

Ms. Cates had been dating the victim, Paul Porter, for approximately two weeks. On the evening of March 5, 1988, a Saturday, the victim visited in Ms. Cates' home. Subsequently, the appellant called Ms. Cates, told her he wanted to see her, and she told the appellant that she did not want to see him. The appellant then instructed Ms. Cates to tell the victim to leave.

During the early morning hours of Sunday, March 6, 1988, the appellant parked his car on the street behind Ms. Cates' home, removed his shotgun from the car, and walked approximately 100 yards to the residence. The appellant broke into the residence, went to the bedroom, and shot the victim at least twice, possibly three times. There is evidence that the appellant reloaded the shotgun since the gun was plugged, and it would only hold three shells. Two spent shells were found in the house, and a spent and a live shell were found in the shotgun. Ms. Cates only heard two shots. A medical doctor, who attended the victim at the hospital, testified the victim sustained three major gunshot entry wounds; and the victim bled to death as a result of a gunshot wound to the abdomen.

The appellant struck Ms. Cates twice. As a result, she received two wounds to her head requiring a total of eleven stitches.

The appellant told Ms. Cates that he had been outside the bedroom window and heard Ms. Cates and Porter. The appellant continuously asked Porter the nature of sexual activity in which he and Ms. Cates had engaged.

The appellant remained inside the residence for approximately one and one-half hours. During this time he called his parents to inform them that he had shot someone, and he attempted to locate a friend by telephone. However, he did not call an ambulance to assist the victim. The victim was lying on the floor bleeding profusely the entire time.

The District Attorney General argued, and it may be reasonably inferred from the evidence, that after the appellant discovered Porter's car in Ms. Cates' driveway, he travelled to the home of his parents several

3. *Mathis v. State,* 590 S.W.2d 449, 473–474 (Tenn.Crim.App.1979); *State v. Copeland,* 677 S.W.2d 471, 453 (Tenn.Crim.App.1984); *State v. Carter,* 681 S.W.2d 587, 588 (Tenn.Crim.App. 1984); *State v. Walker,* 713 S.W.2d 332, 333 (Tenn.Crim.App.1986); *State v. Smith,* 735 S.W.2d 859, 862 (Tenn.Crim.App.1987).

4. Tenn.R.Cim.P. 29(a).

5. *State v. Hall,* 656 S.W.2d 60, 61 (Tenn.Crim. App.1983).

6. *State v. Hall,* supra.

7. Tenn.R.Crim.P. 29(a).

8. *State v. Hall,* supra.

miles away, obtained a shotgun, changed vehicles, and returned to the scene of the crime.

The trial judge properly denied the appellant's motion for the entry of a judgment of acquittal at the conclusion of all the proof. The facts contained in the record, along with resonable inferences which can be drawn from the evidence supported a conviction for murder first degree or murder second degree. The only question presented by the proof was whether the appellant was guilty of first or second degree murder or, in the alternative, voluntary manslaughter. The case of *State v. Thornton*, supra, is clearly distinguishable upon the facts.

This issue is without merit.

## FAILURE TO GRANT A MISTRIAL

■ After the jury had been selected, the appellant contends that the victim's mother was very emotional and crying in a hallway adjacent to the courtroom. Defense counsel stated this occurred in the presence of the jury during a recess. The appellant concedes that the District Attorney General acted promptly to remove the State's witnesses and family members from the same hallway used by the jury after defense counsel expressed concern. However, the District Attorney General did not concede that the incident happened.

The trial judge asked the bailiff, who accompanied the jury during the recess, if there was "any contact, or verbal contact [between] the jurors and those people there." The bailiff answered in the negative. He did state, however, that some lady was crying, but he did not know who she was. When the jury returned to the courtroom, the trial judge asked the jury if they heard or saw anything that might have affected their ability to be fair and impartial. He asked the jurors: "[D]id anybody see or did anybody say anything to any of you that might affect your decision in this case?" The jurors did not respond to the question, indicating that

nothing occurred which might affect their decision.

Since the incident in question occurred outside the presence of the trial judge and was not recorded by the court reporter, the appellant should have presented evidence in support of his motion for a mistrial. The record transmitted to this Court consists of the statements and argument of counsel for the respective parties. Obviously this is not evidence nor may it be used in lieu of evidence in this instance.[9] Consequently, the record is incomplete; and this court is precluded from addressing the issue on the merits.

■ Assuming *arguendo* the event in question occurred in the manner described by defense counsel, we are satisfied that no prejudice enured to the appellant. The trial judge questioned the jury on this issue, and the jurors did not respond to the questions, indicating that nothing had occurred which would have interfered with their duty to be fair and impartial or their obligation to decide the issues based upon the evidence they heard during the trial.

This issue is without merit.

## SUMMATION

■ The fact that the appellant killed the victim, Paul Porter, was not contested. The appellant told the police he shot Porter. He admitted from the witness stand that he shot the victim. Furthermore, the State offered other evidence that established the appellant shot the victim and, as a result, Porter died. The only theory of defense asserted by the appellant was the degree of homicide he committed. He contended that the highest grade of homicide he committed was manslaughter. Of course, the State contended that the appellant was guilty of murder. There were no other defenses available to the appellant.

Defense counsel told the jury during summation that he thought "the facts show[ed] that he [the appellant] reacted to a situation rightly or wrongly, wrongly per-

**9.** *See State v. Burton*, 751 S.W.2d 440, 450 (Tenn.Crim.App.1988); *State v. Roberts*, 755 S.W.2d 833, 836 (Tenn.Crim.App.1988); *Davis v. State*, 673 S.W.2d 171, 173 (Tenn.Crim.App. 1984); *Trotter v. State*, 508 S.W.2d 808, 809 (Tenn.Crim.App.1974).

haps; but he *reacted to a situation in a sudden heat in anger or rage.*" [emphasis added]. At another point counsel stated: "*It is not again a willful, pre-meditated, aggravated assault* on her [Ms. Cates]; you have to look at the circumstances there where he considered her to be his wife and here she is naked in bed with another man which *caused rage and fury* to begin with." [emphasis added]. Defense counsel also stated that the appellant "was *driven to it,* it was *not a conscious act,* but a *sudden heat or rage* [caused] by [the] actions of Cheryl Cates." [emphasis added]. In concluding, defense counsel told the jury "[w]e are asking ... that you bring back a *verdict of not guilty as to the murder charges.*" [emphasis added].

In rebuttal the District Attorney General, attempting to explain to the jurors the issue they were to decide was whether the defendant was guilty of murder or manslaughter, told the jury "[t]he defense of this case is not that the defendant is not guilty; they basically concede that in his argument ..." Defense counsel objected to the District Attorney General's statement, stating "[h]e characterized my plea, and I object to that." The trial judge responded by saying "[t]he jury will decide about the plea."

■ The objection of defense counsel was baseless considering the circumstances of this case. The District Attorney General was simply illustrating to the jury the ultimate issue they were to decide: did the appellant commit murder or manslaughter. That was precisely the issue, and the trial

judge did not commit error in overruling the objection or failing to give a curative instruction. Moreover, the issue regarding the curative instruction was waived because the appellant did not request such an instruction.[10]

This issue is without merit.

## ENHANCEMENT OF PUNISHMENT

■ The trial court instructed the jury regarding the inference of malice that may be drawn from the use of a deadly weapon to kill another. The appellant argues that since this instruction was given, and the jury may have found malice from this fact, the sentence of the appellant could not be enhanced for the use of a firearm in the commission of a felony. We disagree.

The punishment for second degree murder is not enhanced because a firearm is used to murder the victim. Nor does the fact that the trial judge instructs the jury they may infer malice from a deadly weapon prevent the appellant's sentence from being enhanced.

This issue is without merit.

The judgment of the trial court is affirmed.

DUNCAN, P.J., and DWYER, J., concur.

---

10. *See State v. Mackey,* 638 S.W.2d 830 (Tenn. Crim.App.1982); *State v. Leach,* 684 S.W.2d 655

(Tenn.Crim.App.1984).