# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT NASHVILLE

## NOVEMBER 1997 SESSION

FILED

February 24, 1998

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | C.C.A. NO. 01C01-9701-CR-00019 |
| Appellee, | ) | |
| | ) | DAVIDSON COUNTY |
| VS. | ) | |
| | ) | HON. ANN LACY JOHNS, |
| WILLIAM AUBREY TROTTER, JR., | ) | JUDGE |
| | ) | |
| Appellant. | ) | (Possession of cocaine with intent to sell) |

FOR THE APPELLANT:

**GLENN R. FUNK**
Suite 340-M, Washington Sq.
222 Second Ave. N.
Nashville, TN  37201

FOR THE APPELLEE:

**JOHN KNOX WALKUP**
Attorney General & Reporter

**DARYL J. BRAND**
Asst. Attorney General
450 James Robertson Pkwy.
Nashville, TN  37243-0493

**VICTOR S. JOHNSON, III**
District Attorney General

**SHARON BROX**
Asst. District Attorney General
Suite 500, Washington Sq.
222 Second Ave. N.
Nashville, TN  37201

OPINION FILED:_____

**AFFIRMED**

**JOHN H. PEAY,**
Judge

## O P I N I O N

The defendant was indicted for possessing .5 grams or more of cocaine with the intent to sell. A jury convicted him of this offense and, after a hearing, he was sentenced as a range II multiple offender to thirteen years incarceration and a $2,000 fine. In this appeal as of right, the defendant contends that:

1.  The evidence is insufficient to sustain his conviction;

2.  The trial court erred when it allowed two police officers to give non-expert opinion testimony;

3.  The trial court erred when it limited his cross-examination of one of the police officers; and

4.  The trial court erred when it refused to give the "full circumstantial evidence instruction."

Upon our review of the record, we affirm the judgment below.

## FACTS

At approximately 2:30 a.m. on October 20, 1994, Lee Dupie, then a patrol officer for the Metro Police Department, and patrol officer Eby entered the Haynes Garden Apartments complex in Davidson County and walked to the back of one of the buildings. Officer Dupie went to the back of a breezeway and, as a patrol car pulled up to the front of the breezeway, he saw the defendant "walk from the front of the breezeway to the back of the breezeway." At that point, he testified, he and Officer Eby stepped into the breezeway, told the defendant to stop, and identified themselves as police officers. The defendant stopped and Officer Dupie performed a pat-down search. During the search he found a "box cutter" and a plastic bag containing a "rocky substance" in one of the defendant's pockets. At that point, Officer Dupie arrested the defendant. Upon continuing the search, Officer Dupie found approximately $200 cash in tens and twenties in the same pocket. The rocky substance was tested by Glen Everett of the Tennessee

2

Bureau of Investigation Crime Laboratory and determined to be "cocaine base, 3.4 grams."

Officer Dupie testified that the amount of cocaine seized from the defendant was known on the street as an "eight ball." He further testified that the only evidence he had that the defendant possessed the cocaine with the intent to sell was the amount of cocaine, the $200 cash, and the fact that he did not have any paraphernalia for using the drug on his person. Officer Dupie also testified that, in deciding whether to charge someone with simple possession or possession with intent to sell, he takes the suspect's appearance into consideration. He testified that, "most of the time, somebody that is addicted to crack cocaine is, you know, real thin, probably dirty and doesn't care about what they look like, and some of the people that sell drugs are, you know, healthy, you know, they might be clean[.]" He testified that, when he had arrested the defendant, "He was healthy. It seemed like he was in good shape. His eyes weren't sunken in like he had been using a lot of drugs or anything like that. . . . He was clean cut." Officer Dupie further testified that, at the time he had arrested the defendant, "He didn't appear to be under the influence of crack cocaine."

Officer Jesse Burchwell did not participate in the defendant's arrest, but testified that he had been with the Metro Police Department for four and one-half years at the time of the trial, spending the last three and one-half years on the Crime Suppression Unit. He testified that, while a patrol officer, he had made "hundreds" of drug related arrests involving "both simple possession and possession for resale of usually crack cocaine, Dilaudid, and marijuana" and that he had arrested someone for possession with the intent to sell without any indication of the sale itself "over a hundred" times. He also testified that he had worked as an undercover officer on "well over a

3

thousand" occasions. He explained that, as such, he had "to know the street language that the drug dealers are using . . . what to ask for, and . . . approximately what quantity you are going to get for what you ask for." According to Officer Burchwell, sales of crack cocaine were "[u]sually, on the street level, between twenty-dollar ($20.00) rocks and forty-dollar ($40.00) rocks, which is just what it is. It is worth twenty or forty dollars." The "rocks" were usually packaged in "[c]lear plastic bags." He testified that the most common "buy" for users was twenty dollars because "[t]hey don't usually have the money to buy, to go buy more at any one time." The average weight of a twenty-dollar piece of cocaine, he testified, "is usually .2 grams." He further testified that most buys on this level were paid for with twenty-dollar bills.

In response to the State's question as to what, in his training and experience, distinguished between a simple possession and a possession for resale, Officer Burchwell testified, "Usually, the simple possession is usually they always have a crack pipe with them, and the majority of the time, one small rock of crack cocaine, and the possession for resale are obviously several rocks of crack cocaine and . . . the amount of money is an indicator." Other factors, he testified, included "[s]tanding on the corner [in an area known to have a high volume of drug traffic], flagging cars down, going to cars, leaving cars, standing there with really no objective, not, don't live there, not visiting anyone there."

Officer Burchwell testified that he had arrested "hundreds, maybe thousands" of people for simple possession and that they typically possessed "A very small amount, a twenty-dollar ($20) rock usually" at the time of their arrest. When asked by the State, "And in the course of your training and experience, street level dealer, possession for resale, what amounts are you going to find on that person?" Officer

4

Burchwell testified, "Larger amounts, several rocks, packaged, packages we know it to be packaged for resale, money, standing in the area of a high volume of drug traffic." Upon examining the bag of cocaine which had been confiscated from the defendant, he testified that it contained ten "rocks" and that each "rock" could be broken in half to sell "for at least twenty."

The defendant called Charlotte Jennings who lived at the Haynes Garden Apartments. She testified that the defendant had lived with his girlfriend there and that he had been headed in that direction when she saw him arrested. She also testified that she had often seen the defendant when she thought he was high, describing his appearance at those times as "Stumbling, eyes jet red, mumbling, talking out of his head."

The defendant also called his mother, Linda Trotter, who testified that her son had "started taking drugs in '92" and that he was using drugs often in October of 1994. She testified that she had lived at the Haynes Garden Apartments at that time and that her son often stayed with her there as well as with a girlfriend who also lived there. She also testified that, during the entire time she lived there, from 1985 to 1995, it was a high drug activity area including a lot of selling.

**ANALYSIS**

We first address the defendant's contention that the evidence is insufficient to sustain his conviction. A defendant challenging the sufficiency of the proof has the burden of illustrating to this Court why the evidence is insufficient to support the verdict returned by the trier of fact in his or her case. This Court will not disturb a verdict of guilt for lack of sufficient evidence unless the facts contained in the record and any inferences

5

which may be drawn from the facts are insufficient, as a matter of law, for a rational trier of fact to find the defendant guilty beyond a reasonable doubt. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

When an accused challenges the sufficiency of the convicting evidence, we must review the evidence in the light most favorable to the prosecution in determining whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). We do not reweigh or re-evaluate the evidence and are required to afford the State the strongest legitimate view of the proof contained in the record as well as all reasonable and legitimate inferences which may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

Questions concerning the credibility of witnesses, the weight and value to be given to the evidence, as well as factual issues raised by the evidence are resolved by the trier of fact, not this Court. Cabbage, 571 S.W.2d 832, 835. A guilty verdict rendered by the jury and approved by the trial judge accredits the testimony of the witnesses for the State, and a presumption of guilt replaces the presumption of innocence. State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973).

The defendant was convicted of possessing .5 grams or more of cocaine with the intent to sell. T.C.A. § 39-17-417(a)(4) (Supp. 1994). He does not dispute his possession of the drug; rather, he argues that the evidence was insufficient to prove that he possessed it with the intent to sell it. We disagree. The officers' testimony about the customs of cocaine dealing together with the amount of cocaine found on the defendant's person, the fact that it was broken into ten "rocks" each of which could have been further

6

broken in half and sold for twenty dollars apiece, the $200 cash in tens and twenties found on the defendant, his location at an area known for drug dealing, his demeanor and the lack of any paraphernalia for using the drug support the conclusion that he possessed the cocaine for the purpose of selling it. See T.C.A. § 39-17-419 (1991) ("It may be inferred from the amount of a controlled substance . . . possessed by an offender, along with other relevant facts surrounding the arrest, that the controlled substance . . . [was] possessed with the purpose of selling or otherwise dispensing"). This issue is without merit.

We next address the defendant's contention that the trial court erred when it allowed Officers Dupie and Burchwell "to testify as to their opinion as to why [he] was guilty of possession for resale versus simple possession." Initially, we disagree with the defendant in his characterization of the officers' testimony. Officer Dupie testified as to why he charged the defendant with possession for sale rather than simple possession. His reasons were based on his actual experiences in investigating and arresting drug offenders. He did not testify that, in his "opinion," the defendant was guilty as charged. Nor did Officer Burchwell, who also testified about the common differences between users and sellers, based on his experiences in the field. In response to a similar argument, this Court has previously held that a narcotics officer may testify about the language used by drug dealers and the appearance of cocaine. See State v. Carey, 914 S.W.2d 93, 96 (Tenn. Crim. App. 1995).

Additionally, in support of his argument, the defendant relies on an outdated version of Tennessee Rule of Evidence 701.[1] At the time the defendant was tried on July 22 and 23, 1996, Rule 701(a) provided as follows:

---

[1] See Tenn. R. Evid. 701 (1994-1995).

> If a witness is not testifying as an expert,[2] the witness's testimony in the form of opinions or inferences is limited to those opinions or inferences which are
> (1) rationally based on the perception of the witness and
> (2) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue.

To the extent that one could characterize the officers' testimony in this case as "opinion or inferences," it fell within the parameters of this Rule. This issue is without merit.

The defendant also contends that the trial court improperly limited his cross-examination of Officer Burchwell. During defense counsel's questioning of Officer Burchwell, he asked if the officer had "ever made an arrest for possession for resale that, after [an independent review by the prosecutor's office or by a Judge or by a jury], turned into a conviction for simple possession?" Officer Burchwell then asked if counsel meant "by trial or by plea bargain?" A bench conference ensued during which the trial court ruled "That is misleading to the jury when you include plea bargaining. That is going to have to be specifically excluded." Defense counsel objected to the ruling, arguing that "a plea bargain includes cases where the State agrees that the proper charge is simple possession, and if the State agrees to that, then that means that an independent review has been conducted and that is what the disposition is." The trial court responded, "That is not plea bargaining. I vehemently disagree with that characterization of plea bargaining." Defendant now complains that the trial court's ruling was error.

We first note that "[t]he propriety, scope, and control of the cross-examination of witnesses is . . . within the reasonable discretion of the trial judge. Appellate courts may not disturb discretionary limitations on cross-examination absent

---

[2]It is undisputed that neither of the officers was testifying as an "expert." However, it would have been within the trial court's discretion to allow the officers to testify as expert witnesses with respect to the common characteristics of cocaine dealers. Under our Rules of Evidence, "If scientific, technical, or other specialized knowledge will substantially assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify in the form of an opinion or otherwise." Tenn. R. Evid. 702.

a clear and plain abuse." State v. Richardson, 875 S.W.2d 671, 675 (Tenn. Crim. App. 1993) (citations omitted). We see no such abuse here. Moreover, our rules of evidence provide for the exclusion of evidence, even if it is relevant, where "its probative value is substantially outweighed by the danger of . . . misleading the jury." Tenn. R. Evid. 403. We agree with the trial court that the implication of the defendant's question -- that plea bargains result from the district attorney's determination that the arresting officer's charge is incorrect -- is misleading. As pointed out by the State in its brief, plea bargains are often entered into "for practical reasons having little to do with the legal or factual merits of the case." This issue has no merit.

Finally, the defendant contends that the trial court erred when it refused to charge the jury with the "full circumstantial evidence instruction." The defendant refers to the jury instruction that, when the proof against a defendant is completely circumstantial in nature, the "facts must exclude every other reasonable theory except that of guilt" before it can convict. T.P.I. - Crim. 42.03(a). A trial court is required to give this instruction when all of the evidence is circumstantial, whether or not the defendant requests it. See State v. Thompson, 519 S.W.2d 789, 792 (Tenn. 1975). However, when the proof is both direct and circumstantial, the trial court is required to give the instruction only if the defendant requests it. Id. The request must be in writing. Tenn. R. Crim. P. 30(a).

The proof in this case was both direct and circumstantial. We acknowledge that the defendant's counsel orally requested the "full" circumstantial evidence instruction. However, the record contains no written request as required by our rules of procedure. This Court has previously held that, "[a]bsent a written request, a trial court's refusal to give [this] instruction is not error." State v. Derek Denton, No. 02C01-9409-CR-00186,

9

Shelby County (Tenn. Crim. App. filed Aug. 2, 1996, at Jackson) citing State v. Mackey, 638 S.W.2d 830, 836 (Tenn. Crim. App. 1982).  This issue is without merit.

The judgment below is affirmed.

_____
JOHN H. PEAY, Judge


CONCUR:


_____
JOSEPH M. TIPTON, Judge


_____
DAVID H. WELLES, Judge