IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs November 14, 2006

## STATE OF TENNESSEE v. TERESA SUE SKIPPER

**Appeal from the Criminal Court for Loudon County**
**No. 10742      E. Eugene Eblen, Judge**

---

**No. E2006-00785-CCA-R3-CD - Filed January 25, 2007**

---

The Defendant, Teresa Sue Skipper, was convicted of assault, resisting arrest, and obstruction of the execution of an arrest warrant. The Defendant filed a timely motion for a new trial, asserting that the trial judge infringed upon her constitutional rights by not properly instructing the jury. The motion for a new trial was denied. On appeal, the Defendant continues to assert that the jury instructions were erroneous. Furthermore, the Defendant now argues that her constitutional rights were violated because the law enforcement officers entered her home unlawfully and, but for the illegal entry of the officers, she would not have used force against them to protect and defend herself. We conclude that the trial judge properly instructed the jury and that the Defendant waived any claims regarding an unlawful search. Accordingly, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and NORMA MCGEE OGLE, JJ., joined.

Kent L. Booher, Lenoir City, Tennessee, for the appellant, Teresa Sue Skipper.

Robert E. Cooper, Jr., Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; James Scott McCluen, District Attorney General; and Roger Delp, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Factual Background**

On March 16, 2002, five officers of the Loudon County Sheriff's Department attempted to execute arrest warrants on charges of aggravated assault for the Defendant's four sons—Lonnie Farmer, Toby Skipper, Jody Skipper, and Michael Crabtree. All of the sons were adults with the exception of Lonnie Farmer, a juvenile. The arrest warrants listed Lonnie Farmer and Toby Skipper

as residing with the Defendant. The arrest warrant for Michael Crabtree listed a separate address about a mile away on the same road. The arrest warrant for Jody Skipper did not list a known address of his residence. The officers knew that the Defendant's sons frequented both Michael Crabtree's home and the Defendant's home, and they believed that at least two of her sons did reside at her residence.

The officers first went to the home of Michael Crabtree to look for him and his brothers. The officers approached the home and knocked on the door. Michael Crabtree came out the door and onto the porch. The Defendant was also present. The officers advised them that they had a warrant for Mr. Crabtree's arrest, and Mr. Crabtree allowed them to take him into custody without incident. The Defendant, however, appeared agitated and "wondered why [the officers] were there and kept asking . . . why [the officers] were making the arrest." Although the Defendant told the officers they could not enter Mr. Crabtree's home, the officers did enter the residence to look for the other three brothers. They did not find them there.

After leaving Mr. Crabtree's residence, the officers proceeded to the Defendant's home to attempt to locate the three other subjects. When they arrived, one officer went to the door and knocked and announced that he was a Loudon County sheriff's officer. Soon after, a vehicle arrived at the Defendant's residence. The officers testified that the driver was "erratic[ally]" and "recklessly" driving. The Defendant emerged from the vehicle, and according to the officers, she was "irrate" and "belligerant." The officers testified that the Defendant then "told the officers that [they] had no business being there" and continued to use "foul language."

The Defendant then approached the home, and she and her boyfriend Robert Viar entered the residence. According to the officer who was attempting to enter the home, the Defendant tried to slam the door in his face, but he was able to stop her from closing the door with his foot. The officer continued telling the Defendant that he had felony arrest warrants for her other three sons. The officer testified that he had the warrants in his hand and showed them to the Defendant. The officer was able to open the door, and the Defendant "backed away." Once the officers entered the home, the officers testified that the Defendant "stepped around behind" one officer and "swung" at him, attempting to hit him in the "back of the head." The officers were able to prevent the Defendant from striking the officer and immediately subdued her, handcuffed her, and arrested her.

The State's evidence was refuted by two defense witnesses. A Loudon County Jail corrections officer stated that she had the original warrants at the jail and that the officers called in to the jail to see if warrants had been issued for the Defendant's four sons. The jail corrections officer opined that the officers would not have called to inquire about the warrants if they in fact had the warrants in their possession as they claimed.

Additionally, the Defendant's boyfriend, Mr. Viar, testified that the Defendant was calm and attempted to help the police. Mr. Viar stated that the Defendant only wanted to see the arrest warrants but that the officers refused and said that they did not have to provide the warrants. Mr. Viar stated that the officers came "rushing" at the Defendant and "knock[ed] her down" and started

"beating her." Mr. Viar said that the officers had no reason to subdue and arrest his wife and claimed the officers acted like "gangsters" when the Defendant merely wanted to see the warrants and help the authorities.

## Procedural Background

The Defendant was indicted for resisting arrest,[1] obstruction of the execution of an arrest warrant,[2] and assault.[3] The Defendant did not file a pre-trial motion to suppress alleging that the officers unlawfully entered her home or otherwise violated her constitutional rights. The case proceeded to trial. At the conclusion of the trial and after the charging and retiring of the jury, the Defendant orally requested special jury instructions on Tennessee Code Annotated section 39-11-609(b) (governing self-defense in the home) and based on the case of Payton v. New York, 445 U.S. 573 (1980) (holding that a state statute permitting the warrantless and non-consensual entrance into a home with force to make a felony arrest was unconstitutional). The trial judge denied the motions.

The jury found the Defendant guilty of all three indicted offenses. The Defendant was sentenced to eleven months and twenty-nine days on each of the offenses to be served concurrently. The trial judge ordered that two days be served in jail and that the remainder of the sentence be served on supervised probation.

The Defendant filed a timely motion for a new trial, which asserted that the jury was not properly instructed and, as such, that her constitutional right to a trial by jury had been violated.

---

[1] Under Tennessee Code Annotated section 39-16-602(a), the offense of resisting arrest is defined as follows:

> It is an offense for a person to intentionally prevent or obstruct anyone known to the person to be a law enforcement officer, or anyone acting in a law enforcement officer's presence and at the officer's direction, from effecting [an] . . . arrest or search of any person, including the defendant, by using force against the law enforcement officer or another.

Tenn. Code Ann. § 39-16-602(a).

[2] Under Tennessee Code Annotated section 39-16-602(c), the offense of obstruction of the execution of an arrest warrant is defined as follows:

> It is an offense for any person to intentionally prevent or obstruct an officer of the state or any other person known to be a civil process server in serving, or attempting to serve or execute, any legal writ or process.

Tenn. Code Ann. § 39-16-602(c).

[3] Under Tennessee Code Annotated section 39-13-101, the offense of assault is defined as follows:

> A person commits assault who . . . [i]ntentionally or knowingly causes another to reasonably fear imminent bodily injury.

Tenn. Code Ann. § 39-13-101(a).

Specifically, the Defendant renewed her claim that the jury should have been instructed on Tennessee Code Annotated section 39-11-609(b) and <u>Payton v. New York</u>. The Defendant further claimed in the motion for a new trial that the trial court infringed upon her right to a trial by jury because the instructions should have explained precisely when officers may enter the home of a third party to arrest another person with a warrant. The Defendant did not claim that her rights under the Fourth Amendment to the United States Constitution or her rights under Article 1, section 7 of the Tennessee Constitution were violated. The motion for a new trial was denied. This timely appeal followed.

## Analysis
### I. Arrest Warrant

The Defendant first asserts that her constitutional rights were violated when the police officers entered her home to execute arrest warrants for her sons. <u>See</u> U.S. Const. amend. IV; Tenn. Const. art. 1, sec. 7.[4] The Defendant alleges that she had "been shown no document purporting to give the officers legal authority to enter her home" and was provided with "no purpose for their presence . . . except for a general statement that they have warrants." As such, the Defendant states that she "attempted to prevent the unlawful entry into her home by these officers." The State responds by arguing that this issue is waived because the Defendant failed to file a motion to suppress alleging the constitutional violation, failed to object to the introduction of any alleged unconstitutional evidence at trial, and failed to include the error in the motion for a new trial. We agree with the State that the Defendant has failed to properly preserve any alleged error by the trial court for appellate review. As such, the Defendant's alleged constitutional claims are waived.

### A. Suppression of Criminal Conduct

The Defendant attempted to make three separate arguments that the trial court erred. The Defendant's most cogent argument for a trial court error relating to the attempted arrests seems to be that, if the officers had not entered the Defendant's home, she would not have been compelled to defend herself against what she believed to be an unlawful intrusion. While the Defendant explicitly states in her brief that this "is not a case seeking application of an exclusionary rule," the Defendant continues to argue the constitutional violations as if to request precisely such an exclusionary remedy. However, this argument fails for multiple reasons.

First, the Defendant did not file a motion to suppress evidence from the allegedly unlawful entry as required by Tennessee Rule of Criminal Procedure 12(b)(3). Second, the Defendant did not object to the introduction of the evidence of her conduct during the trial as required by Tennessee Rule of Evidence 103(a). Thus, the Defendant did not preserve any errors in the record and has waived any potential constitutional issues relating to the legality of the entry into the home. Tenn. R. Evid. 103. As a general rule, questions not raised in the trial court will not be considered on

---

[4]"The Tennessee Supreme Court has noted that generally 'article 1, Section 7 [of the Tennessee Constitution] is identical in intent and purpose with the Fourth Amendment [of the United States Constitution].' Thus, for the purposes of this opinion, we consider the two provisions to be coextensive." <u>State v. Elpidio Valdez</u>, No. M1999-00791-CCA-R3-D, 2001 WL 327994, at *2 n.2, (Tenn. Crim. App., Nashville, Apr. 4, 2001) (citations omitted).

appeal. See Lawrence v. Stanford, 655 S.W.2d 927, 929 (Tenn. 1983). This Court must treat the error as waived unless it is deemed to be plain error.

Tennessee Rule of Appellate Procedure 52 governs plain error. Tenn. R. App. P. 52(b). Plain error requires that five factors be established: (1) "the record must clearly establish what happened in the trial court"; (2) "a clear and unequivocal rule of law must have been breached"; (3) "a substantial right of the accused must have been adversely affected"; (4) "the accused did not waive the issue for tactical reasons"; and (5) "consideration of the error is necessary to do substantial justice." State v. Adkisson, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994). The Defendant's case fails, if not for other reasons, simply because no "clear and unequivocal rule of law" has been violated.

To begin with, the Defendant argues that the officer's entry was unlawful. The Defendant bases this premise on the United States Supreme Court case of Steagald v. United States, 451 U.S. 204 (1981), which held that officers cannot enter the home of a third party to search for the subject of an arrest warrant without either consent of the third party or exigent circumstances. 451 U.S. at 211-16. However, the record suggests that at least two of the suspects did reside with the Defendant; therefore, this residence was not shown to be a third-party residence as in Steagald. The Defendant's oft-cited case of Payton v. New York clearly permits entry into a suspect's own residence with an arrest warrant coupled with a reasonable belief that the suspect may be found at that location:

> If there is sufficient evidence of a citizen's participation in a felony to persuade a judicial officer that his arrest is justified, it is constitutionally reasonable to require him to open his doors to the officers of the law. Thus, for Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within.

445 U.S. at 602. While the suspects' residence information and other factual disputes could have been fully adjudicated at a motion to suppress hearing, this Court must conclude that no clear rule of law has been breached because the record does not contain the factual findings necessary to reach such a conclusion.

Even assuming, arguendo, that the officers unlawfully entered the Defendant's residence, which does not appear to be the case, this Court has held that "evidence of Defendant's criminal conduct committed *subsequent* to an illegal arrest, or even as a result thereof, should not be suppressible under the exclusionary rule." State v. Jerry Wayne Elliott, No. W1999-00361-CCA-R3-CD, 2001 WL 13233, at *2 (Tenn. Crim. App., Jackson, Jan. 5, 2001) (holding that evidence of the defendant shooting at police officers after they attempted an illegal arrest should not be suppressed); see also State v. Abernathy, 159 S.W.3d 601, 604-05 (Tenn. Crim. App. 2004) (holding that, even if the seizure of the defendant were unconstitutional, the defendant's criminal conduct of attempting

-5-

to swallow contraband in the officers' presence was admissible and should not be suppressed); State v. George Wesley Harville, Jr., No. 01C01-9607-CC-00300, 1997 WL 661726, at *3 (Tenn. Crim. App., Nashville, Oct. 24, 1997) (stating in dicta that evidence of a crime committed after an illegal stop occurred should not be suppressed, "particularly . . . [for] crimes committed subsequent to the illegal stop or arrest"). Based on the rationale of these opinions, we cannot conclude that a clear and unequivocal rule of law has been breached. We therefore decline to review this issue under the plain error doctrine.

### B. Self-Defense in "Unlawful" Police Entry

Next, the Defendant argues that her conduct was justified as a matter of law according to the self-defense statutory provisions. Specifically, the Defendant states that "[n]o exception is made in the self-defense statute for unlawful forced entry into homes by police officers and none should be created by this [C]ourt."[5] The Defendant relies generally upon the self-defense in the home provisions of Tennessee Code Annotated section 39-11-611(b) without giving due regard to the contrary provisions contained in Tennessee Code Annotated sections 39-11-611(e) and 39-16-602(b). Once again, the Defendant has not predicated her appeal upon trial court errors but simply discusses principles of self-defense law that are within the legislative prerogative.

Regardless, the Defendant's argument fails because the Defendant did not include any such claims in the motion for a new trial, with the exception of her reference to the jury instructions. The Tennessee Rules of Appellate Procedure state that "no issues presented for review shall be predicated upon error in the admission or exclusion of evidence . . . unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived." Tenn. R. App. P. 3(e); see also State v. Martin, 940 S.W.2d 567, 569 (Tenn. 1997). The Defendant in this case did not comply with this requirement to preserve the alleged error for appeal. We decline to conduct a plain error analysis because the Defendant has not drawn this Court's attention to any trial court decision or ruling that may be deemed erroneous.

---

[5] The Defendant states that "this Court should find as a matter of law that when an officer attempts service of process by forcing warrantless entry into a defendant's home, particularly when the officer has no reason to suspect that the person he seeks is within, then there is no violation of [Tennessee Code Annotated section] 39-16-602." This is directly contrary to the plain language of Tennessee Code Annotated section 39-16-602(b), which pointedly states that "it is no defense to prosecution under this section that the . . . arrest or search was unlawful." Tenn. Code Ann. § 39-16-602(b). Thus, even if this Court were to reach the merits of the Defendant's statutory argument, this provision prohibits the Defendant's conduct regardless of unlawful police conduct.

The only instance in which the Tennessee Code permits self-defense against a law enforcement officer is in the case of excessive force. See Tenn. Code Ann. § 39-11-611(e). In light of the three officers' testimony that the Defendant struck at the officer before she was arrested, the jury simply did not accredit the defense version of events, which alleged that the officers "rush[ed]" the Defendant, knocked her to the ground, and hit her in the "eye and stomach."

### C. Constitutionality of Resisting Arrest Statute

Finally, the Defendant appears to argue that Tennessee Code Annotated section 39-16-602(b) is unconstitutional. This statute provides that an unlawful search or arrest is not a defense to prosecution. The Defendant circuitously alleges that, if such an unlawful entry is not deemed to be a defense to prosecution and the officers may testify regarding conduct that occurs in the home, then the Fourth Amendment's protection has been violated.

Although the Defendant does not explicitly argue the unconstitutionality of this statute, the Defendant discusses at length the principles of the United States and Tennessee Constitutions' "protections of person, home and property from unreasonable searches and seizures." The Defendant states that "this case bears on the basic privacy and security—indeed—the very sanctity of a person's home as a refuge and asylum." Further, the Defendant, relying on Hudson v. Michigan, states that "it is a serious matter if law enforcement officers violate the sanctity of the home by ignoring the requisites of lawful entry. Security must not be subject to erosion by indifference or contempt." 547 U.S.___; 126 S.Ct. 2159, 2170 (2006) (Kennedy, J., concurring). Finally, the Defendant states that the "fundamental questions presented here by the [D]efendant are whether the officers' forcible entry into her home violated long established Fourth Amendment [principles]."

This Court concludes that the Defendant's arguments effectively amount to an assertion that Tennessee's statutory provisions that do not allow self-defense of one's home against arresting officers is unconstitutional. This Court gleans that this assertion is based also upon the Defendant's extensive reliance on the case of Payton v. New York, wherein the United States Supreme Court held the state statutory scheme unconstitutional when it allowed the warrantless, non-consensual entry into a home with force to make a felony arrest. 445 U.S. 573 (1980).

Once again, the Defendant's argument based on the alleged unconstitutionality of the Tennessee statutory provisions should have been properly presented at trial and in the motion for a new trial to preserve the issue for appeal. This issue was not raised in the trial court. The Defendant's failure to include the issue in the motion for a new trial waives the argument on appeal that the applicable statute is unconstitutional. We decline to exercise plain error review, for once again the record does not allow us to conclude that a clear and unequivocal rule of law has been breached.

### II. Jury Instructions

Next, the Defendant asserts two violations of her right to trial by jury based upon alleged erroneous jury instructions. First, the Defendant claims that the trial judge erred by failing to instruct the jury that officers may only enter a residence with both an arrest warrant and a "reasonable belief that the person they are seeking must be located therein." Second, the Defendant claims that the trial judge erred by not instructing the jury on "the [D]efendant's affirmative defense of use of force in her home when the [D]efendant reasonably believed that law enforcement officers were unlawfully entering her home without a search warrant, exigent circumstances, or an arrest warrant coupled with

the reasonable belief that the person they sought was in her home." The State responds that the trial court did not err because the jury was properly instructed on self-defense and that no further special instructions were submitted to the trial court in writing. We agree with the State's argument.

Under the Tennessee Rules of Criminal Procedure, a party requesting special jury instructions "may file written requests that the court instruct the jury on the law as set forth in the requests." Tenn. R. Crim. P. 30(a). "A trial court will not be placed in error where a requested instruction is not in writing." State v. Timothy M. Hodge, No. M2001-03168-CCA-R3-CD, 2002 WL 1732357, at *5 (Tenn. Crim. App., Nashville, July 26, 2002) (citing State v. Mackey, 638 S.W.2d 830, 836 (Tenn. Crim. App. 1982)). Because Rule 30 of the Tennessee Rules of Criminal Procedure "envisions that such requests be made in writing," oral requests for instructions are not sufficient for an appellate court to find that the trial court's instructions were improper. Mackey, 638 S.W.2d at 836.

In the Defendant's case, the jury instructions were not requested in writing as required by Rule 30(a) and Mackey. Tenn. R. Crim. P. 30(a); Mackey, 638 S.W.2d at 836. Thus, on appeal, we conclude that the trial court did not err by denying the Defendant's oral proposal of jury instructions. We conclude that the jury was given complete and accurate instructions of the law.

## Conclusion

Based upon the foregoing reasoning and authorities, we affirm the judgments of the trial court.

_____
DAVID H. WELLES, JUDGE