IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs October 30, 2001 at Knoxville

## STATE OF TENNESSEE v. DEDONNAS R. THOMAS

**Appeal from the Criminal Court for Shelby County**
**No. 98-13520     Joseph B. Dailey, Judge**

**No. W2000-01465-CCA-R3-CD - Filed January 30, 2002**

The defendant was tried by jury in the Shelby County Criminal Court on two counts of felony possession of marijuana arising from a single episode.  The jury acquitted the defendant of possession of marijuana with intent to sell but convicted him of possession with intent to deliver. The trial court ordered a two-year workhouse sentence.  On appeal, the defendant questions the sufficiency of the evidence, and he complains that erroneous evidentiary rulings, inadequate jury instructions, and prosecutorial misconduct during closing arguments require a new trial.  Based upon our review, we affirm the conviction.

**Tenn. R. App. P. 3; Judgment of the Criminal Court is Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which DAVID G. HAYES and JOHN EVERETT WILLIAMS, JJ., joined.

Leslie I. Ballin, Memphis, Tennessee, for the Appellant, Dedonnas R. Thomas.

Paul G. Summers, Attorney General and Reporter; Jennifer L. Smith, Assistant Attorney General; William L. Gibbons, District Attorney General; and Amy Weirich, Assistant District Attorney General for the Appellee, State of Tennessee.

## OPINION

In the early morning of June 14, 1998, the defendant, Dedonnas R. Thomas, was apprehended while in possession of approximately 49 grams of marijuana.  The circumstances of his arrest are virtually uncontested.

Brookwood Apartments in Shelby County, Tennessee is a large complex with over 400 units.  Ingress to the complex is controlled through a guardhouse and a security gate.  Arrist Douglas, a private security guard, was working the six p.m. to six a.m. shift at the apartment complex on June 13 and 14, 1998. Shortly after midnight, the defendant drove up to the gate, signed

in, and told Douglas whom he was going to visit. As the defendant then approached the gate, Douglas noticed the butt of a handgun under the armrest on the driver's side. As a result, Douglas told the defendant to pull over in front of the guard house and get out of the automobile.

The defendant complied with Douglas's request. At trial, Douglas testified that as the defendant got out of the car, "small bags of marijuana started falling off of him." Douglas thought the bags were falling from the defendant's pants pocket. Douglas ordered the defendant to stand against the car, and Douglas searched the defendant. In the defendant's right pocket, Douglas found a large bag of what he surmised was marijuana with other smaller bags inside. Douglas and another security officer took custody of the plastic bags and the gun[1] from the defendant's car, and they detained the defendant until the police arrived. While waiting for the police, the defendant solicited Douglas to throw the drugs away because "he didn't want that charge."

The defendant was arrested, and the police confiscated and preserved as evidence the thirteen plastic bags believed to contain marijuana. The substance was later weighed and analyzed. It tested positive for tetrahydrocannabinol, which is the active ingredient in marijuana. The net weight of the contraband after it was removed from the plastic bags was 49 grams, not quite two ounces.

Because the weight of marijuana involved was more than 14.175 grams but less than ten pounds, the defendant was charged with the felony Class E variety of unlawful possession of a controlled substance with intent to sell (Count 1) and unlawful possession with intent to deliver (Count 2). *See* Tenn. Code Ann. § 39-17-417, -417(g)(1) (Supp. 2000). The defendant did not testify at trial, and he did not dispute that he unlawfully possessed 49 grams of marijuana. He defended on the basis that the state could not show that he intended to deliver or sell the marijuana. The jury did not agree, and it found the defendant guilty of unlawful possession with intent to deliver.

## I. Sufficiency of the Evidence

The defendant fervently insists that the state's evidence was insufficient as a matter of law to prove his intent to deliver the marijuana that he possessed when arrested. The defendant points to the uncontested evidence that when arrested he was driving a 1985 Oldsmobile, that he did not have a beeper or cellular telephone with him, that he was dressed casually in jeans and a tee shirt, that he wore no ostentatious jewelry, and that he possessed no cash. According to the defendant, these telling details refuted the notion that he was plying the trade of "drug dealing," particularly because the state did not offer any evidence of the purity or street value of the marijuana or about the packaging.

---

[1] The parties stipulated at trial that the gun did not belong to the defendant. It was owned by Ms. Sophia Rowell.

The state counters that intent to sell or deliver may be inferred from the quantity of the controlled substance possessed along with any other relevant facts surrounding the arrest. The state relies on the amount of marijuana in the defendant's possession together with the method of packaging in thirteen individual plastic bags as being sufficient to sustain an inference of intention to deliver, rather than possession for mere personal use.

When an accused challenges the sufficiency of the evidence, an appellate court inspects the evidentiary landscape, including the direct and circumstantial contours, from the vantage point most agreeable to the prosecution. The reviewing court then decides whether the evidence and the inferences that flow therefrom permit any rational factfinder to conclude beyond a reasonable doubt that the defendant is guilty of the charged crime. *See* Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 324, 99 S. Ct. 2781, 2791-92 (1979); *State v. Duncan*, 698 S.W.2d 63, 67 (Tenn. 1985); *State v. Dykes*, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990), *overruled on other grounds by State v. Hooper*, 29 S.W.3d 1 (Tenn. 2000).

In determining sufficiency of the proof, the appellate court does not replay and reweigh the evidence. *See State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Witness credibility, the weight and value of the evidence, and factual disputes are entrusted to the finder of fact. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978); *Liakas v. State*, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956); *Farmer v. State*, 574 S.W.2d 49, 51 (Tenn. Crim. App. 1978). Simply stated, the court will not substitute its judgment for that of the trier of fact. Instead, the court extends to the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences that may be drawn from the evidence. *See Cabbage*, 571 S.W.2d at 835.

The evidence in this case, viewed most favorably to the state, amply supports the verdict that the defendant unlawfully possessed marijuana with intent to deliver. Code section 39-17-419 permits a jury to infer

> from the amount of a controlled substance or substances possessed by an offender, along with other relevant facts surrounding the arrest, that the controlled substance or substances were possessed with the purpose of selling or otherwise dispensing. . . . Such inference[ ] shall be transmitted to the jury by the trial judge's charge, and the jury will consider such inference[] along with the nature of the substance possessed when affixing the penalty.

Tenn. Code Ann. § 39-17-419 (Supp. 2000). The jury in this case was instructed consistently with the statute.

Although the defendant had none of the more obvious trappings thought to be associated with "drug dealers," the lack of such accouterments is not fatal to the legal sufficiency of the state's case. We agree with the state that the quantity of marijuana possessed by the defendant

that evening, in conjunction with the method by which it was packaged in thirteen separate plastic bags, supported a reasonable inference of the defendant's intent to deliver. The defendant's only rebuttal was that he did not look like a drug dealer, and he argued in closing that inasmuch as consumer bulk purchases of items such as paper towels and soft drinks are commonplace, it was not implausible that he was merely stocking up on marijuana for his personal use. The jury heard the evidence and considered the arguments and inferences offered by the parties. The jury rejected the defendant's theory and arguments, and that is its prerogative. *See State v. Larry Wayne Burney*, No. M1999-00628-CCA-R3-CD (Tenn. Crim. App., Nashville, April 7, 2000) (defendant had 2.5 grams of cocaine base, divided into two large rocks and eighteen smaller ones, and had $37 in cash on his person; evidence sufficient to infer defendant intended to sell the cocaine); *State v. Larry G. Hart*, No. 02C01-9406-CC-00111 (Tenn. Crim. App., Jackson, June 28, 1995) (in view of all circumstances, evidence that defendant possessed one gram of cocaine base divided into eighteen rocks was sufficient to support conviction for possession with intent to sell).

The evidence, we hold, is sufficient to support the conviction.

## II. Opinion Testimony

The defendant next complains that the security guard, during direct examination, offered an improper and harmful opinion that the defendant was trying to conceal the bags of marijuana as he got out of his automobile. The objected-to opinion arose during the following exchange:

> Q. Did the bags that fell off of the defendant appear –
>
> A. They were the same as the ones that were in the bag.
>
> Q. Okay.
>
> A. The big, loose plastic bag, it was the same ones. Just, I guess, he tried to conceal them with something before he got out and they fell out.
>
> MR. BALLIN: Object to what he guessed, Your Honor. I ask the jury to be instructed to disregard it.
>
> THE COURT: Overruled. Go ahead.

In our view, the security guard was attempting to explain for the jury his perception of the bags of marijuana that fell from the defendant as he got out of his vehicle. A lay witness is permitted to offer an opinion if it is based on the witness's own personal knowledge and observations and if it is helpful to a clear understanding of the testimony or the determination of a fact in issue. *See* Tenn. R. Evid. 701(a). The admission or exclusion of such evidence is reviewable

on appeal only for abuse of discretion. *See State v. Gray*, 960 S.W.2d 598, 606 (Tenn. Crim. App. 1997). We are not persuaded that the trial court abused it discretion in this instance.

Nonetheless, even if the testimony should have been excluded or stricken, we fail to see how the defendant was prejudiced. The defendant did not contest possession of the marijuana; the issue was whether he intended to sell or deliver the marijuana. The defendant reasons that the testimony invited the jury to conclude that he had more than the usual motive to conceal his possession, which was indicative of a drug dealer. The logic of this argument, however, eludes us. The defendant cites no authority – and we are aware of none – that illegal drug users are less prone to conceal their drugs than are drug dealers. Consequently, we are not prepared to attribute prejudice to the security guard's testimony.

### III.  War on Drugs

The defendant next accuses the state of resorting to inflammatory rhetoric that was designed to scare the jury into returning a guilty verdict. The basis for this accusation is the state's invocation of the "War on Drugs" theme during closing arguments.

> MS. WEIRICH:  Mr. Ballin told you yesterday that this case wasn't about the war on drugs. As a representative of the citizens of this community, I take great issue with that.
>
> MR. BALLIN: Judge, if I could interject an objection.
>
> THE COURT: Overruled.
>
> MS. WEIRICH:  It most certainly is about the war on drugs, ladies and gentlemen. The citizens of the state of Tennessee do not want drugs in their community. They don't want drugs sold on the street corners. They don't want drugs sold in their schools. This is about the war on drugs.

"The fairness or unfairness of comments appealing to the national or local community interests of jurors . . . will depend in great part on the nature of the community interest appealed to, and its relationship to, and the nature of, the wider social-political context to which it refers." *United States v. Solivan*, 937 F.2d 1146, 1152 (6th Cir. 1991), *quoted in State v. Pulliam*, 950 S.W.2d 360, 368 (Tenn. Crim. App. 1996). Arguments that invoke the "War on Drugs" as a rallying point to return a guilty verdict can be particularly pernicious. *See Pulliam*, 950 S.W.2d at 368. Although the nature of the defense advanced in this case opened a great many proverbial windows and doors, the state's rhetoric, in our opinion, was not confined to the generous metes and bounds marked off by the defendant. As one jurist has written, "Merely because a defense attorney opens the door does not mean that a prosecutor can come storming through it in a pair of hobnailed boots." *United States v. Sepulveda*, 15 F.3d 1161, 1189 n.24 (1st Cir. 1993).

The state introduced its "War on Drugs" argument by reminding the jury that defense counsel had told them yesterday "that this case wasn't about the war on drugs." We interpret this remark as most likely referring to something defense counsel said during opening statements, and evidently the "War on Drugs" was mentioned. We are unable to surmise more because the record does not contain a transcript of opening statements.

We do, however, have the benefit of a transcript of closing arguments. From the transcript, we glean that the state waived first argument, preferring to address the jury in rebuttal after the defendant's closing argument. The centerpiece of the defendant's closing argument was that the defendant did not fit the profile of a "drug salesman." Although the state did respond and insist, as quoted above, that this case was about the "War on Drugs," our review of the transcript convinces us that the state was not applying the ordinary connotation to the phrase. Rather, the state was legitimately attacking the defense efforts to stereotype drug dealers. After telling the jury, as quoted above, that "[t]his is about the war on drugs," the state continued, "And here's the defendant's ammunition. See, we're fighting the battle against, what does a drug dealer look like?"

Had the state pursued the approach that prosecutions should not be decided on the basis of an accused's appearance, no problem likely would have arisen. The state's argument, however, quickly veered off course. After explaining that the battle was against "what does a drug dealer look like," the state argued,

> According to Mr. Ballin's argument, unless someone is driving a shiny car, wearing tons of jewelry, loaded down with cash and equipped with a cell phone and a beeper, got to let them go. . . . What are you going to do, state of Tennessee? What we're going to do is tell the defendants in this community, the Dedonnas Thomases of this community, it's not okay. If you believe Mr. Ballin's argument, the defendant will be rewarded for his sneakiness, for his criminal behavior. Can't you see if now, the word getting back to the drug dealers in the community. Hey, you all, get rid the [sic] those phones and those beepers and those rings and those shiny flashy clothes and those cars that you like to drive –
>
> . . .
>
> . . . Get rid of it because, see, here's the gig. This is what we've got to focus on. We need to be driving around in beat-up cars, don't have a lot of cash on you, don't have a beeper, don't have a phone, then what's the state of Tennessee doing to do? What can the state do to us? Ladies and gentlemen, this is what we can do, stop and listen to what these 13 identical bags of marijuana are telling you. Listen to them. Casual use? Let's see, Monday morning, Monday night. Tuesday morning, Tuesday night – come on. Is it reasonable

to think that the defendant went out and blew his money on some marijuana to smoke for his own fun and that's what he got? No, it's not.

By this argument, the state was exhorting the jury to return a guilty verdict because, otherwise, the state would be powerless to combat drug trafficking. This type of argument has been condemned as improper. *See United States v. Barker*, 553 F.2d 1013, 1024-25 (6th Cir. 1997) (finding reversible misconduct when prosecution argued that "if you can't take this evidence and find these defendants guilty on this evidence that [sic] we might as well open all the banks and say, 'Come on and get the money, boys, because we'll never be able to convict them'"); *Brown v. United States*, 370 F.2d 242 (D.C. Cir. 1966) (improper closing argument when the prosecutor warned the jury that to acquit the defendant would leave the police powerless to protect themselves and citizens against assault short of resort to martial law). Here, the state explicitly urged the jury to send a message to "the Dedonnas Thomases of this community" by finding the defendant guilty.

There is another aspect of the state's summation that is troubling. The state's rhetorical question, "What can the state do to us?," equated a not-guilty verdict with immunizing drug dealers from prosecution. This argument was misleading. Tennessee most certainly does criminalize illegal possession of a controlled substance, and the defendant in this case was admittedly guilty of illegal possession of marijuana. Perhaps the prosecutor does not agree with the misdemeanor classification of simple possession, but that disagreement should be addressed to the legislature, not our juries.

When a prosecutor makes improper comments during closing argument, we must determine "whether the impropriety 'affected the verdict to the prejudice of the defendant.'" *State v. Bigbee*, 885 S.W.2d 797, 809 (Tenn. 1994) (quoting *Harrington v. State*, 385 S.W.2d 758, 759 (Tenn. 1965)). On appellate review, the court should "consider several factors including [1] the intent of the prosecutor, [2] the curative measures which were undertaken by the court, [3] the improper conduct viewed in context and in light of the facts and circumstances of the case, [4] the cumulative effect of the remarks with any other errors in the record, and [5] the relative strength or weakness of the case." *State v. Gray*, 960 S.W.2d 598, 609 (Tenn. Crim. App. 1997); *see also Judge v. State*, 539 S.W.2d 340, 344 (Tenn. Crim. App. 1976). In addition, we must keep in mind that closing argument is subject to the trial court's discretionary control. *See State v. Middlebrooks*, 995 S.W.2d 550, 557 (Tenn.1999).

We have carefully studied the closing remarks made by the prosecution; considering the five factors we conclude that the state's misconduct did not affect the verdict to the prejudice of the defendant. While factor (2) favors the defense because the trial court overruled the defense objections and took no curative action, the other factors weigh against the defendant. Although the state's remarks trespassed into improper territory, the trespass was an overzealous attempt to respond to the defendant's arguments and not calculated to unfairly prejudice the defendant. The facts and circumstances of the case were straightforward; it was the "bulk consumer purchases" and the "doesn't look like a drug dealer" theories of defense that prompted the state's rebuttal. There are no

other errors by which to gauge any cumulative prejudicial effect. Last, the state presented a solid case for conviction of possession with intent to distribute or sell.

The defendant is not entitled to relief on this claim.

### IV. Jury Instruction: Simple Possession

The defendant raises a challenge to the trial court's jury charge regarding the lesser-included offense of misdemeanor, simple possession. The nature of the defendant's complaint appears to be that the trial court misstated the elements of simple possession by failing to clarify that the statute does not define any maximum amount that can be possessed for personal use. This failure, the defendant says, violated due process and the jury trial guarantee of the Sixth Amendment.

The offense of simple possession is statutorily defined: "It is an offense for a person to knowingly possess or casually exchange a controlled substance unless the substance was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of professional practice." Tenn. Code Ann. § 39-17-418 (1997). The defendant cites no authority that a jury instruction defining simple possession should or must charge that the offense is unlimited by any specific maximum quantity of illegal substance.

We also note that the record fails to include a transcript of the instructions as read to the jury, although it contains what purports to be a written copy of the trial court's charge. Failure to include a transcript normally waives review of appellate issues pertaining to jury instructions because without a complete record, it is impossible for this court to discern whether the written jury instruction conforms to the instructions as read to the jury and thus, whether error actually occurred. *See* Tenn. R. App. P. 24(b); *State v. Jones*, 623 S.W.2d 129 (Tenn. Crim. App.1981). Furthermore, the record fails to reflect that the defense complied with the requirement of Criminal Procedure Rule 30 that special requests for jury instructions be filed in writing. Tenn. R. Crim. P. 30(a). A trial court will not be placed in error where a requested special instruction was not presented in writing. *See State v. Mackey*, 638 S.W.2d 830, 836 (Tenn. Crim. App. 1982).

This issue, we hold, has been waived.

### V. Prior Murder Conviction

The defendant's final lamentation is that the trial court improperly applied Tennessee Evidence Rule 609(a)(3) to allow the state to use a 1986 conviction for second degree murder to impeach the defendant if he elected to testify at trial. The defendant cites no authority; instead he advances a generalized proposition that the potential for unfair prejudice is inherent in impeachment with a conviction for a crime that is far more serious than the charged offense. We reject his argument.

Subject to certain conditions for admissibility, Tennessee Evidence Rule 609 authorizes the use of proof of a witness's prior convictions in order to attack a witness's credibility. Tenn. R. Evid. 609(a). The prior conviction must be for a felony or a crime involving dishonesty or false statement. *Id.* 609(a)(2). To be eligible as an impeaching conviction, a prior felony conviction need not involve dishonesty. When the witness to be impeached is the criminal defendant, however, the state must give notice prior to trial of its intent to utilize the conviction for impeachment purposes, *Id.* 609(a)(3), and upon request, the court must determine the admissibility of an eligible conviction by deciding whether "the conviction's probative value on credibility outweighs its unfair prejudicial effect on the substantive issues." *Id.* In making this determination, "two criteria are especially relevant." *State v. Mixon*, 983 S.W.2d 661, 674 (Tenn. 1999). First, the court must "analyze the relevance the impeaching conviction has to the issue of credibility" and "explain [the relevance] on the record," *id.*, and second, it must "assess the similarity between the crime on trial and the crime underlying the impeaching conviction," *id.* (quoting Cohen, *et al.*, Tennessee Law of Evidence § 6.09[10][c], at 6-97 to -99 (4th ed. 2000)).

On appellate review, the trial court's rulings on the admissibility of prior convictions for impeachment purposes are subject to reversal only for abuse of discretion. *See, e.g.*, *Mixon*, 983 S.W.2d at 674.

In this case, the issue is the balancing of probative value versus unfair prejudicial effect; that is, whether the probative value of the defendant's second degree murder conviction on the defendant's credibility outweighed its prejudicial effect upon the substantive issues presented at trial. The defendant's second degree murder conviction implicates a crime of violence. "[F]elonies of a violent nature reflect on the moral character of a witness[, and] . . . this evidence is not usually without probative value." *State v. Blanton*, 926 S.W.2d 953, 960 (Tenn. Crim. App. 1996). Furthermore, the crime of second degree murder bears no similarity to the crime of felony possession of illegal narcotics. Accordingly, we see no abuse of discretion in permitting impeachment use of the second degree murder conviction, and we affirm the trial court's ruling. *See Mixon*, 983 S.W.2d at 674 (unfairly prejudicial effect of an impeaching conviction on the substantive issues greatly increases if the impeaching conviction is substantially similar to the crime for which the defendant is being tried).

Having considered the issues raised on appeal and finding no reversible error, we affirm the judgment of the trial court.


_____
JAMES CURWOOD WITT, JR., JUDGE

-9-